UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| *Plaintiff*, | : | CIVIL NO.: |
| | : | |
| v. | : | |
| | : | |
| $2,730.00 DOLLARS IN UNITED STATES CURRENCY; $3,318.00 DOLLARS IN UNITED STATES CURRENCY; $2,600.00 DOLLARS IN UNITED STATES CURRENCY; $4,020.00 DOLLARS IN UNITED STATES CURRENCY; $5,330.00 DOLLARS IN UNITED STATES CURRENCY; $3,500.00 DOLLARS IN UNITED STATES CURRENCY; $4,900.00 DOLLARS IN UNITED STATES CURRENCY | : | |
| | : | |
| *Defendants*. | : | |
| | : | |
| [CLAIMANT: SABINA PERALTA, LISA GUZMAN, LUIS MANUEL ROSARIO, FREDDY ANTONIO ACOSTA HERRERA] | : | January 6, 2020 |

VERIFIED COMPLAINT OF FORFEITURE

Now comes Plaintiff, United States of America, by and through its attorneys, John H. Durham, United States Attorney for the District of Connecticut, and David C. Nelson, Assistant United States Attorney, and respectfully states that:

1. This is a civil action in rem brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(C), which provides for the forfeiture of property which constitutes or is derived from proceeds traceable to any listed violation of law or any offense constituting "specified unlawful activity," or a conspiracy to commit such offense, and 21 U.S.C. § 881(a)(6), which provides for the forfeiture of proceeds traceable to the exchange of controlled substances in violation of the Controlled Substances Act, 21 U.S.C. § 801 et seq.

1

2.  This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355. Venue is appropriate in the District of Connecticut by virtue of 28 U.S.C. § 1395(b).

3.  The Defendants are $2,730.00 dollars in United States currency; $3,318.00 dollars in United States currency; $2,600.00 dollars in United States currency; $4,020.00 dollars in United States currency $5,330.00 dollars in United States currency; $3,500.00 dollars in United States currency; AND $4,900.00 in United States currency ("Defendant Currency").

4.  The Defendant Currency is located within the jurisdiction of this Court.

5.  Sabina Peralta, Lisa Guzman, Luis Manuel Rosario, and Freddy Antonio Acosta Herrera ("Claimants") have submitted administrative claims of ownership as to the Defendant Currency.

## Background of Investigation

6.  In January of 2019, law enforcement began investigating the Rosario-Peralta Cocaine and Fentanyl Trafficking Organization ("Rosario DTO"). This investigation identified the Rosario DTO as a Stamford, Connecticut, based DTO, responsible for the retail distribution of cocaine in Stamford and the wholesale distribution of primarily fentanyl to Rosario DTO members in Philadelphia, Hartford, and Rhode Island.

7.  In 2014, Luis Miguel Rosario-Peralta ("Rosario-Peralta") illegally entered the United States from Mexico. He had remained in the United States despite not having any legal status. Multiple confidential sources (CS) provided information that Rosario-Peralta resided in Stamford, CT. Rosario-Peralta had utilized his wife Lisa Guzman, and his mother Sabina Peralta, as front names on several businesses he runs in Stamford including Café Luna, San Miguel Market I and San Miguel Market II. The Rosario DTO

used the businesses identified above in facilitating their drug trafficking activities. Investigators also identified Selleck Market and Rosario Market, located in Stamford and owned by Rosario-Peralta's brothers Jose Luis Rosario and Luis Manuel Rosario. During the course of the investigation, law enforcement learned that Rosario-Peralta was in the process of purchasing the West Main Barbershop in Stamford from Rosario DTO member for approximately $120,000.00.

8. In January and May of 2019, investigators conducted controlled purchases of cocaine from employees of the San Miguel Market I. In April 2019, investigators conducted a controlled purchase of cocaine from Jhonaury Matos at the West Main Barbershop. Investigators debriefed multiple confidential sources who identified the involvement of employees at Café Luna in the retail distribution of cocaine from that location. Using CS information, surveillance, and wire intercepts, investigators documented several instances of the Rosario DTO utilizing these businesses as meeting locations to discuss Rosario DTO business and facilitate the wholesale distribution of fentanyl.

9. Members of the Rosario-Peralta family were active participants in the Rosario DTO. In March and April of 2019, investigators observed Luis Miguel Rosario-Peralta move a vehicle from behind the West Main Barbershop to his residence at 15 Victory Street. Investigators received CS information that the vehicle was being used to store and transport a multi-kilogram heroin load to Philadelphia. The next day, investigators observed Lisa Guzman transport the vehicle from 15 Victory Street to San Miguel Market I and meet with Luis Miguel Rosario-Peralta and Ramon Tavares-Almanzar. Luis Miguel Rosario-Peralta and Ramon Tavares-Almanzar travelled the following day to

Philadelphia in this vehicle. This travel was corroborated by license plate reader data and cell site data.

10. In June of 2019, law enforcement applied for permission to implement a Title III wiretaps. The Court approved these applications and law enforcement obtained the Title III wiretaps of cellular telephones utilized by the DTO including Luis Miguel Rosario-Peralta, Jhonaury Matos, and Roman Tavares-Almanzar. The wiretap intercepts revealed multiple conversations between Luis Miguel Rosario-Peralta and other members of the Rosario DTO, including members of his family, discussing utilizing the above listed businesses as meeting places to facilitate their illegal drug trafficking.

11. Additionally, law enforcement learned from wiretaps that Luis Miguel Rosario-Peralta told his brother, Jose Luis Rosario, to pick him up from his residence. Surveillance observed Jose Luis Rosario arrive in a 2014 Honda Accord and pick up Luis Miguel Rosario-Peralta, after which they drove to San Miguel Market II. Luis Miguel Rosario-Peralta was dropped at this location while his brother continued to San Miguel Market I. Luis Miguel Rosario-Peralta told Jose Luis Rosario to pick up 1,000 "pesos" from "Ivan." The same day, at 3:20 P.M., law enforcement observed Jose Luis Rosario at a branch of Bank of America in the 2014 Honda Accord. Investigators intercepted Jose telling Luis Miguel Rosario-Peralta he picked up 900. In turn, Luis Miguel Rosario-Peralta instructed him to get 200 to reach a total of 1100.

12. In another instance, Lisa Guzman identified a law enforcement surveillance vehicle as she departed from San Miguel Market II and called Rosario-Peralta to warn him. The surveillance vehicle was parked on a busy street near the market and was unmarked. This

observation demonstrated Lisa Guzman's knowledge of and involvement with the Rosario DTO.

13. On July 5, 2019, based on both electronic and physical surveillance, law enforcement arrested Luis Miguel Rosario-Peralta and Samuel Melo-Cruz in Yonkers, NY, who were in possession of approximately three kilograms of fentanyl. Law enforcement executed an additional search warrant at an apartment in Yonkers that investigators identified as a location where Luis Miguel Rosario-Peralta and Samuel Melo-Cruz obtained the fentanyl. The search resulted in the seizure of an additional approximately four kilograms of suspected fentanyl and a stolen firearm. Also on July 5, 2019, investigators conducted a consent search at 18 Mohawk Court, however, no evidence was seized at that time.

14. On July 8, 2019 following Luis Miguel Rosario-Peralta's arraignment, investigators received CS information that approximately $120,000.00 in United States currency had been hidden at 18 Mohawk Court at the time of the consent search but had not been discovered by investigators.

15. The same day, investigators immediately applied for a federal search and seizure warrant for 18 Mohawk Court in Stamford, Connecticut. The Honorable Judge William Garfinkel authorized a federal search warrant for that address, where Sabina Peralta, Luis Manuel Rosario, Jose Luis Rosario, Luis Miguel Rosario-Peralta reside. Investigators identified 18 Mohawk Court as a location used by Luis Miguel Rosario-Peralta to hide drug proceeds.

16. In anticipation of the federal search and seizure warrant being granted, law enforcement established surveillance near 18 Mohawk Court, Stamford, Connecticut. At approximately 5:30 P.M., law enforcement observed Luis Manuel Rosario exit the

residence and enter a blue BMW X6 and depart the area. Due to the information that there were drug proceeds stored at the residence, and the anticipation of the warrant, law enforcement conducted a traffic stop on the BMW near Selleck and Irving Streets. Luis Manuel Rosario was detained and searched. Seized from his pants pocket was an undetermined amount of U.S. currency, and later identified as the In Rem Defendant $3,550.00 in U.S. currency.

17. At Approximately 5:46 P.M. investigators observed Sabina Peralta, Lisa Guzman (wife of Rosario-Peralta), a minor child, and Jose Luis Rosario exited the house and entered a Toyota sedan and departed. Law enforcement conducted a motor vehicle stop on the Toyota sedan and all three subjects were detained. Seized from Jose Luis Rosario's person was an undetermined amount of U.S. currency, later identified as the In Rem Defendant $3,319.00 in U.S. currency. Seized from Lisa Guzman's person was an undetermined amount of U.S. currency, later identified as the In Rem Defendant $5,530.00 in U.S. currency.

18. At approximately 5:51 P.M. Drug Enforcement Administration (DEA) agents notified law enforcement that the federal search and seizure warrant for 18 Mohawk Court had been authorized. This information was relayed to Sabina Peralta, Lisa Guzman, and Jose Luis Rosario. Sabina Peralta provided the keys to the residence and all four subjects including Luis Manuel Rosario were transported back to the residence as law enforcement made entry to an, at that time, unoccupied 18 Mohawk Court.

19. During the search, several items of evidentiary value were located and seized, such as a small plastic bag containing a white, powdery substance of suspected cocaine, seized in the laundry room. Additionally, $2,730.00 in U.S. currency was seized the bedroom

        dresser of Luis Manuel Rosario. Further, $2,600.00 of U.S. currency was seized from a purse in the bedroom closet of Sabina Peralta. Investigators also found $4,900.00 of U.S. currency, seized from behind the headboard in Sabina Peralta's bedroom. Finally, $4,020.00 of U.S. currency was seized from inside the dresser in the bedroom of Jose Luis Rosario.

20. In regards to the $2,730.00 and $3,550.00, Luis Manuel Rosario made voluntary statements that the $3,550.00 was from wire transfers made from Selleck Market and the money was going to be deposited into the bank. He stated that the $2,730.00 was proceeds from Selleck Market, but he was unable to provide documentation to support either claim. Regarding the $3,319.00 and $4,020.00, Jose Luis Rosario made voluntary statements that the $3,319.00 was for payroll at Café Luna and he pays the employees on Monday. He stated that the $4,020.00 was proceeds from Café Luna. No documentation was provided to support these claims. In regards to the $2,600.00, Sabina Peralta made voluntary statements that the $2,600.00 was to pay the employees at Café Luna, although she was unable to detail how many employees were getting paid with the total amount of money, notwithstanding her son's statement that the $3,319.00 was also for payroll at Café Luna.

## Claims for Relief

22. Based upon the above information, it is believed that the Defendant Currency constitutes property or is derived from proceeds traceable to a violation constituting "specified unlawful activity" and is therefore subject to forfeiture to the United States of America pursuant to 18 U.S.C. § 981(a)(1)(C).

23. The Defendant Currency represents proceeds or property derived from engaging in "the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical," and is therefore subject to forfeiture to the United States of America pursuant to 18 U.S.C. § 981(a)(1)(C).

24. Based upon the above information, it is believed that the Defendant Currency constitutes proceeds from the illegal sale and distribution of narcotics and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

25. The Defendant Currency represents proceeds traceable to the exchange of controlled substances in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 et seq., and is therefore subject to forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States of America prays that Warrants of Arrest In Rem be issued for $2,730.00; $3,318.00; $2,600.00; $4,020.00; $5,330.00; $3,500.00; and $4,900.00 in United States currency; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the Defendant Currency to be condemned and forfeited to the United States of America for disposition according to the law; and that the United States of America is granted such other and further relief as the Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY


/S/ David C. Nelson
DAVID C. NELSON
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO.: ct25640
157 CHURCH STREET, 25TH FLOOR
NEW HAVEN, CT 06510

<u>DECLARATION</u>

I am a Task Force Officer for the Drug Enforcement Administration, and the agent assigned the responsibility for this case.

I have reviewed the contents of the foregoing Verified Complaint of Forfeiture and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 6th day of January, 2020.

<u>/s/ Andrew M. Hoffman</u>
ANDREW M. HOFFMAN
SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION